**Cleveland Bd. of Education**
**v.**
**Lesko**
*[Cite as 2 AOA 426]*

*Case No. 56592*

*Cuyahoga County, (8th)*
*Decided April 12, 1990*

R.C. 2305.06
R.C. 2305.07
R.C. 2305.09
R.C. 2505.02
Civ. R. 54(B)
Civ. R. 56

*John T. Corrigan, Cuyahoga County Prosecutor By: Willian Mason, Assistant Prosecuting Attorney, Justice Center - 9th Floor 1200 Ontario Street, Cleveland, Ohio 44113, For Plaintiff-Appellees.*

*Herbert R. Whiting, James B. Davis, Three Commerce Park Square No. 810, 23200 Chagrin Boulevard Beachwood, Ohio 44122, For Defendant-Appellant.*

DYKE, J.

In 1986 appellant, the Board of Education of the Cleveland City School District, brought suit against, among others, appellees, Panzica Construction Co. ( a general trades contractor) and Panzica's bonding company, Ohio Casualty Insurance Company. The complaint alleged, in part, that Panzica was liable for a breach of an express warranty (count two) and was negligent in its construction (count four) of Case Elementary School. Appellees filed a joint motion for summary judgment which contended, in part, that counts two and four were barred by the statutes of limitations.[1] The motion was granted without explanation.[2] Appellant raises two assignments of error which challenge the judgments on the negligence and express warranty claims.

A.

The parties raise the question of whether or not there is a final order in this case.

In *Board of Education* v. *Regner, et al.* (October 26, 1989), Cuyahoga App. No. 56053, 56054 and 56060 this court held that even with the Civ. R. 54(B) language ("no just reason for delay") this court did not have the jurisdiction to address an appeal from a summary judgment on five of six counts when the remaining count arose from the same facts; all the counts were part of one claim and thus there was no final order since no claim was resolved. As here, plaintiff had alleged that a building the defendant constructed for plaintiff was defective. *Id.* at 7. In both cases the complaints asserted negligence, strict liability, breach of contract, and breach of implied and express warranties and the trial court denied summary judgment on the contract count but granted it on the tort counts. *Id.* at 6.

*Regner* concluded that the journal entry granting summary judgment was not a final order. *Id.* at 4. Only final orders may be reviewed. R.C. 2505.02. When, as here, a judgment is rendered in other than a special proceeding or post-judgment situation a "final order" is "[a]n order that effects a substantial right in an action which in effect determines the action and prevents a judgment ...." *Id.*

However, Civ. R. 54(B) states as follows:

"(B) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

*Regner* correctly determined that unless "one full cause of action" was resolved the judgment could not be a final order even if it stated "no just reason for delay." *Regner*, at 7. However, *Regner* concluded that a claim which asserts a legal right, growing out of a single transaction or a series of transactions, nevertheless states but a single claim for relief even if couched in the form of several theories of recovery. *Id.* at 6 *citing Aldrete* v. *The Foxboro Co.* (1988), 49 Ohio App. 3d 81-82. A claim, as used in Civ. R. 54(B), means a set of facts which give rise to legal rights not legal theories of recovery based on the facts, according to *Regner*. *Id.* It reasoned that separate and distinct recovery must be possible for each claim. *Id.*

*Regner* insisted that all of the Board's claims arise from the same set of facts and thus assert a single bundle of rights which are intertwined and cannot be divided for purposes of appellate review. *Id.* citing *Aldrete*, 49 Ohio App. 3d at 81. Certification pursuant to Civ. R. 54(B) does not produce multiple claims or a final order. *Id.*

*Aldrete* cites a number of reported cases but they are not dispositive because they are cases in which one claim was made but several kinds of *relief* (i.e. remedies) were requested and a judgment on one type of damages or relief was not a final order.[3] A judgment on liability alone is not a final appealable order even if the 54(B) language is present. *See Noble* v. *Codlwell* (1989), 44 Ohio St. 3d 92, 96. In contrast, in *Aldrete* and *Regner* the complaint raised multiple counts (i.e. causes of action or claims) based on *similar* facts and this court incorrectly concluded that a final order was not made.

"A final order, therefore, is one disposing of the whole case *or some separate and distinct branch thereof." Noble*, 44 Ohio St. 3d at 44. (Emphasis added.) "Civ. R. 54(B) was adopted to permit appeal when judgment is rendered on fewer than all of the *claims* or parties present before the court." *Stewart* v. *Midwestern Indem. Co.* (1989), 45 Ohio St. 3d 124, 127. Although a claim is a set of facts which give rise to legal rights "[t]he words 'claims for relief' as used in Civ. R. 54(B), are synonymous with "cause of action'." *Noble*, 44 Ohio St. 3d at 95. One set of facts can give rise to several causes of action. *See e.g. Board of Education of the City of Cleveland* v. *Della Motte-Larson* (December 21, 1989), Cuyahoga App. No. 56275, unreported. In *Della Motte-Larson* the plaintiff also sued after a building roof began to leak. Plaintiff raised the same claims pleaded in *Regner* and in *Lesko*.

Summary judgment was granted on all but the contract claim and this court proceeded to address the merits without finding any difficulty with jurisdiction.

*Regner, and Della Motte-Larson* and *Lesko* all arise out of the same set of facts: a leaky roof in a building. Each cause of action requires unique facts in addition to the basic scenario in which the defendant built a building with a roof that leaks. Breach of contract requires a contract. Negligent construction requires a legal duty, a breach, damage and causation. Breach of a warranty requires a warranty which could be created wihtout a contract or a legal duty. The relief requested could be specific performance or rescission damages and the right to refuse to pay, respectively.

Thus a final order is a judgment on any claim or cause of action even if the claim has some facts in common with another cause of action arising out of the same common set of facts. Even if the same recovery were requested for two claims (e.g. damages for negligent construction and breach of warranty) the causes of action are still separate. One claim might survive a Civ. R. 12(B) (6) claim and the other fail because each relies on its own facts and is a separate and distinct branch of the case.

*Aldrete* contended that its tort and contract claims all arose from the termination of employment and thus were inextricably "intertwined." *Aldrete*, 49 Ohio App. 3d at 81. Claims that arise out of the same operative fact are nonetheless *separate* claims although the fact that they are intertwined may mean that a final order exists but it would be an abuse of discretion to grant Civ. R. 54(B) certification. *Noble*, 44 Ohio St. 3d at 97, f. 7. (Claim and counterclaim present "mirror claims.") *Aldrete* concluded that the tort and contract claims were "inextricably intertwined," and explained that "the plaintiffs seek punitive damages without compensatory damages for their tort claims, apparently relying on their contract claims to establish their right to underlying compensatory damages." *Aldrete*, 49 Ohio App. 3d at 81. *Aldrete* reasoned that the judgment on the tort claims could not be reviewed until the contract claim was adjudicated because the tort claim relied on the contract claim to establish the compensatory damages needed for a right to punitive damages. In the instant case the claims are not dependent upon each other for damages and thus are not inextricably intertwined. *Aldrete* is limited to its peculiar facts.

*Chef Italiano Corp.* v. *Kent State University* (1989), 44 Ohio St. 3d 86 does not mandate a different result. The syllabus of that case states, "An order of a court is a final, appealable order only if the requirements of both Civ. R. 54(B), if applicable, and R.C. 2505.02 are met." *Id.* Our result and analysis are consistent with the syllabus of *Chef Italiano*. In writing the majority opinion of *Chef Italiano* Justice Douglas stated that the trial court could *not* certify with the "no just reason for delay" language of Civ. R. 54(B) because claims remained outstanding and thus there was no final order as required by R.C. 2505.02. *Id.* at 89. Douglas reasoned that because two claims had not been adjudicated a judgment against the party had not been prevented. *Id.* This literal reading of R.C. 2505.02 was rejected in *Noble* (decided the same day) in which Douglas concurred in judgment. Douglas' analysis in *Chef Italiano* received only one other judge's support. Two judges dissented. In his dissent Justice Moyer specifically rejected the analysis. Two judges concurred in the syllabus and judgment. Wright concurred in judgment only. Therefore, the syllabus received four votes and is the law. We act consistently with that syllabus. Douglas' analysis received only two votes and is not the law. It is interesting to note that Justice Douglas never finds that a complaint demanding specific performance, the quieting of quiet title, and damages for breach of fiduciary duty and breach of contract constitutes one claim arising out of the failure to perform a contract. In fact the opinion refers to them as claims (plural) and never broached the bundle of rights theory posited in *Aldrete*.

We are not bound by *Aldrete* or *Regner*. We act consistently with *Della Motte-Larson* in finding jurisdiction and proceeding to address the merits.

### B.

In the motion for summary judgment appellees contended that appellant had the burden of demonstrating that the statutes of limitation did not bar the claims. However, the party asserting a statute of limitation defense has the burden of showing that a claim is barred by a statute of limitation. *Velotta* v. *Petronzio Landscaping, Inc.,* (1982), 69 Ohio St. 2d 376, 379; *Rainey* v. *Shaffer* (1983), 8 Ohio App. 3d 262. 263.

Appellees cite *Riley* v. *Montgomery* (1984), 11 Ohio St. 3d 75 which states as follows:

"Where a party moves for summary judgment asserting the statute of limitations the other party may not merely rely on his pleadings, but is under an affirmative duty to present, by affidavit or otherwise, a genuine issue of material fact demonstrating that the statute of limitations is not applicable."

However, a careful reading of *Riley* reveal that the Supreme Court held that once Riley established that the legal malpractice was committed more than a year before the complaint was filed Montgomery and Robbins could not merely rely on the pleadings. *Id.* at 79. They had to present evidence of "the validity of the defenses claimed immune to the statute." *Id. Riley* cites Civ. R. 56 *(E)* which states as follows:

"When a motion for summary judgment is made *and supported as provided* in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him."

The Supreme Court has since repeatedly held that the initial burden is on the movant. *Mitseff* v. *Wheeler* (1988), 38 Ohio St. 3d 112, 114-115 (construing *Celotex* v. *Catrett* (1986), 477 U.S. 317); *VanFossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100; *Morris* v. *Ohio Casualty Co.* (1988), 35 Ohio St. 3d 45. Once a movant has shown that there is no genuine issue the non-movant must meet his or her burden. *See VanFossen,* 36 Ohio St. 3d at syllabus 7. But if the movant fails to show that the statute applies, the non-movant has no obligation to present any evidence. *See Toledo's Great Eastern Shoppers City, Inc.* v. *Abde's Black Angus Steak House* (1986), 24 Ohio St. 3d 198. Even if the non-movant fails to respond, summary judgment is improper unless the evidence of the movant establishes that reasonable minds could come to but one conclusion. *Morris,* 35 Ohio St. 3d at 47. The failure to respond cannot, of itself, be the basis for judgment against the non-movant. *Id.*

Therefore, a bare allegation in a motion for summary judgment does not shift the burden of proof to the non-movant. *See Penn* v. *Nooney* (December 21, 1989), Cuyahoga App. No. 57717, unreported at 3 citing *Mitseff.* The burden was on appellees to show that the express warranty claim was filed more than fifteen years after the construction was completed and that the negligence claim was filed more than four years after a cognizable event whereby appellant discovered or should have discovered that the

damage was related to the defendant's act and it had notice of the need to pursue possible remedies.

## C.
### I
### THE TRIAL COURT ERRED IN DISMISSING THE NEGLIGENCE CLAIM.

This assignment of error is well taken.

In an action for failure to construct in a workmanlike manner using ordinary care the essential allegation is negligence and the four-year statute of limitations in R.C. 2305.09(D) applies. *Velotta* v. *Landscaping, Inc.* (1982), 69 Ohio St. 2d 376 (syllabus 1).

R.C. 2305.09(D) states as follows:

"An action for any of the following causes shall be brought within four years *after the cause thereof accrued:*

"* * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code." (Emphasis added.)

R.C. 2305.09(D) does not state when a cause of action for negligence accrues. "Absent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations." *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84 (syllabus 1). "In general, a cause of action exists from the time the wrongful act was committed." *Id.* at 87. However, in *Velotta* the Ohio Supreme Court addressed the question of when a cause of action for negligent construction accrues. "[W]here the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Id.* at 379. Thus, "[w]hen negligence does not immediately result in damages, a cause of action for damages arising from negligent construction does not accrue until actual injury or damage ensues." *Id.* at syllabus 2.

In *Velotta,* although it did not use the term, the court applied the discovery rule to hold that the period would begin to run when the actual damage ensues. This court has subsequently applied the discovery rule to negligent construction cases. *Board* v. *URS Co.* (December 7, 1989), Cuyahoga App. No. 56260, unreported, at p. 5.

In a more recent opinion this court attempted to reconcile *Velotta* with *Investors REIT One* v. *Jacobs* (1989), 46 Ohio St. 3d 176. In *Board* v. *Dela Motte-Larson,* (December 21, 1989), Cuyahoga App. No. 56275, unreported, this court correctly cited *Velotta* for the proposition that a cause of action for negligent construction accrues when the actual injury or damage occurs. *Delta Motte-Larson* at p. 5. However, it also cited *Investors* as support for its holding that the discovery rule is not applicable to negligence claims. *Id.* at p. 6. *Dela Motte-Larson* concluded that because a cause of action generally accrues when the wrongful act is committed an action for negligent construction will accrue when the wrongful act is committed unless the wrongful act does not give rise to injury immediately. *Id.* "Since the wrongful conduct complained of was not readily discernable to the Board when it was committed, the cause of action began to accrue when the actual damage occurred." *Id.*

*Dela Motte-Larson* read *Investors* to prohibit the application of a discovery rule in any negligence action. In *Investors* the court held that the discovery rule was inapplicable to accountant negligence claims under R.C. 2305.09. *Investors,* 46 Ohio St. 3d at syllabus 2. The court insisted that it had not yet provided that the discovery rule is applicable to negligence claims. *Investors* did not overrule or modify *Velotta*. It did not mention it at all.

*Dela Motte-Larson* read *Investors* very broadly but the syllabi of *Investors* contain the law. In *Investors* the syllabi did not address negligence claims in general. They specifically addressed accountant negligence. The broad statements of dictum cannot implicitly overrule *Velotta* which is still good law cited by this court, *Dela Motte-Larson; URS*; and, albeit prior to *Investors,* by the Ohio Supreme Court, *Oliver* v. *Kaiser Community Health Foundation* (1983), 5 Ohio St. 3d 111; *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84.

*Dela Motte-Larson* states that there are three points at which a cause of action may accrue: the date the wrongful act was committed, the date the actual injury or damage ensued and the date determined by the discovery rule. *Dela Motte-Larson* rejects the application of the discovery rule in negligent construction cases and then cites *O'Stricker* and *Velotta* as support for its holding that when an injury does not result immediately the cause of injury will accrue when the actual injury or damage ensues. However, these are the same position.

A review of *O'Stricker* reveals that the conclusion *Dela Motte-Larson* arrives at and the discovery rule it rejects are the same thing. *O'Stricker* cites the general rule for accrual and

then states that *"in situations such as the case at bar,* the application of the general rule 'would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence.' ... *In such cases,* a cause of action for damages does not arise until actual injury or damage ensues. *See ... Velotta ...* paragraph two of the syllabus ('actual injury' rule applied in action for negligence ...)." *O'Stricker,* 4 Ohio St. 3d 84, 87. (Emphasis added.) The court stated that, "plaintiff urges that the cause of action 'arose' at the time of injury, *i.e.,* when plaintiff discovered his cancer and the causal relationship to asbestos exposure. This position and its variants are known as the 'discovery' rule ...." *Id.* at 88. *O'Stricker* went on to hold that "[w]hen an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10." *Id.* at syllabus 2.

Therefore, *O'Stricker* concluded, "in situations such as the case at bar" instead of accruing when the wrongful act was committed, "in such cases" the cause of action will arise when actual damage ensues, as in *Velotta, id.* at 87, and the discovery rule will apply, *id.* at syllabus 2. The actual damage rule of *Velotta* is an application of the discovery rule, not a separate rule or starting point for the accrual of a cause of action.

The court subsequently reaffirmed the conclusion that "the actual damage rule" and "the discovery rule" are the same. In *Oliver* the court noted that "[t]his court's adoption of the discovery rule in the context of a medical malpractice action today is also consistent with recent holdings ... [I]n *Kunz* v. *Buckeye Union Ins. Co.* (1982), 1 Ohio St. 3d 79, 82, this court held that a cause of action against an insurance agent for failure to obtain coverage accrued at the date of loss rather than at the time of the procurement .... In *Velotta* ... it was held the actual injury rule applied in an action for negligence ...." *Oliver,* 5 Ohio St. 3d at 117.

Clearly there are two possibilities, not three: the date of the wrongful conduct or the date of discovery which may be established to be the date the plaintiff knew by virtue of the actual injury which gives notice. Therefore *Dela Motte-Larson* incorrectly extended the holding of *Investors* to prohibit a discovery rule in any

negligence action. *Investors* applies only to accountant negligence and did not alter *Velotta.* *Velotta* provides a judicially created discovery rule for negligent construction cases. *Dela Motte-Larson* correctly held that *Velotta* applied but incorrectly stated that discovery rules are inapplicable in negligence actions.

A cause of action accrues when the relationship for that particular transaction or undertaking terminates or when the client discovers the injury or damage, whichever occurs later. *Zimmie* v. *Calfee, Halter & Griswold* (1989), 43 Ohio St. 3d 54 (syllabus) *citing Omni-Food & Fashion, Inc.* v. *Smith* (1988), 38 Ohio St. 3d 385 (syllabus 1). To determine the date of injury there must be an inquiry into the particular facts to determine when the injured party became aware of, or should have become aware of, the extent and seriousness of his or her condition, whether the injured party was aware, or should have been aware, that the condition was related to the actions of the defendant and whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition. *Omni-Food,* 38 Ohio St. 3d at syllabus 2; *Hershberger* v. *Akron City Hospital* (1987), 34 Ohio St. 3d 1 (syllabus 1). A plaintiff becomes or should become aware of the extent and seriousness of his injury when there is a "cognizable event" which does or should lead the plaintiff to believe that the condition is related to the conduct of the defendant and where the cognizable event does or should place the plaintiff on notice of the need to pursue his or her possible remedies. *Zimmie,* 43 Ohio St. 3d at the syllabus; *Allenius* v. *Thomas* (1989), 42 Ohio St. 3d 131 (at syllabus).

Therefore, a cause of action for negligent construction accrues when there is a cognizable event whereby the plaintiff discovers or should have discovered that the injury was related to the defendant's act or non-act and the plaintiff is put on notice of a need to pursue possible remedies against the defendant or when the relationship between the parties for that particular transaction or undertaking terminated whichever occurs later. The complaint was filed on July 14, 1986. Appellees had to show that the cognizable event occurred before July 14, 1982.

Without authority or support, appellees contend in their motion that appellant should have known "by at least 1980." Appellees submitted only the affidavit of Panzica's president which simply stated that the

construction was completed in 1976. Appellee submitted nothing to show when appellant discovered or should have discovered the alleged defects.

In the brief in opposition appellant included an affidavit from the Chief of the Business Department which stated as follows:

"Although [the building] has manifested numerous defects in design and construction it was not until ... Halter ... informally advised ... Halter (sic) on or about June 26, 1987 that the Board of Education was apprised of the nature and extent of these defects, their origin and cause and the parties responsible for these defects."

The Board's affidavit admits that the building manifested defects prior to June 26, 1987 but never says *when*. It could have discovered them days, weeks, months or even several years before the complaint was filed and the claim would still not be barred.

Appellees argue that since construction was completed in 1976 it is "inconceivable" that the defects did not manifest themselves before July 14, 1982. On the contrary it is entirely conceivable and incumbent upon appellees to show otherwise. A problem (such as a leak) requiring an initial investigation is not the same as notice that the leak is related to the conduct of the defendant and does not place the plaintiff on notice of the need to pursue remedies. There is no evidence of the date that the Board was first aware of the leaks or any of the other problems, let alone of the existence of defects, other than that it was prior to Halter's report in "1987."

Appellees cite two cases in which appellate courts upheld summary judgment because the evidentiary documents showed that the plaintiffs knew or should have reasonably discovered the defects at a point prior to the four-year period before the complaints. *See Gutshall* v. *Loveless* (April 7, 1987), Butler App. No. CA-85-08-084, unreported and *Chelsea Moore* v. *H.C. Nutting Co.* (October 9, 1985), Hamilton County App. No. C-840861, unreported. However, if there remains a genuine issue of fact concerning the date that the plaintiff knew or should have reasonably discovered the defects summary judgment is improper. In *Gutshall* and *Moore* the admissions of the plaintiff established a date unrefuted by any other evidence. Here, appellees failed to present evidence that appellant knew or should have reasonably discovered the defects by July 14, 1982.

Appellees failed to present any evidence to show a "cognizable event." Appellant's affidavit was not an admission of discovery more than four years before the date the complaint was filed.

Summary judgment will not be rendered unless reasonable minds can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Civ. R. 56(C). 'The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment.' *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64 .... Moreover, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C). *Toledo's Great Eastern Shoppers City*, 24 Ohio St. 3d at 201-202.

Summary judgment on the negligent construction claim was improper. Assignment of error No. I is sustained.

II
## THE TRIAL COURT ERRED IN DISMISSING THE WRITTEN EXPRESS WARRANTY CLAIMS.

The complaint alleged that Panzica and the architect "breached their express warranties...." (Count II.) In the motion for summary judgment appellee alleged that the six-year statute of limitation for oral contracts barred all of count II. R.C. 2305.07 states as follows:

"Except as provided in section 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied ... shall be brought within six years after the cause thereof accrued."

An oral express warranty is covered by R.C. 2305.07. R.C. 2305.06 states as follows:

"Except as provided in Section 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause therefor accrued."

R.C. 1302 concerns sales of goods and is inapplicable.

The parties agree that R.C. 2305.06 applies to written express warranties and R.C. 2305.07 applies to oral express warranties. Appellees argue that the memorandum established that a breach of a guarantee is the same claim as breach of contract. As previously noted the memorandum was not referred to by the court and not issued in this case. In any event a guarantee in a written contract is not the same

as an express warranty which they concede could be either oral or written.

Appellees contend that once the movant *asserts* a statute of limitation the non-movant must prove the claim is not barred. As previously discussed the movant must first meet its burden. Appellees failed to present evidence to show that the express warranties were barred. Instead, appellees erroneously insist that appellant had the burden of proving that *written* express warranties were made.

We have already pointed out that a non-movant has no burden to present evidence of its claim until the movant has presented evidence that there are no issues of fact. Appellees argue that the trial court assumed that the express warrantie were oral since appellant presented no evidence of written express warranties. The use of the inclusive term "express warranties" encompassed oral and written express warranties absent a limitation to the contrary. It is no more reasonable to assume that only oral express warranties were intended than it is to assume only written express warranties were meant.

Only when the movant presents evidence that no written express warranties were ever made would the burden shift to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *See* Civ. R. 56(E). Appellees presented no evidence on the issue of express warranties. They merely assert that absent proof from appellant the entire claim is barred. Any oral express warranties are barred because the complaint was filed more than six years after construction was completed. However, any written express warranties *claimed* survive since the complaint was not filed more than fifteen years after the contractual relationship was created. Whether or not any written express warranty were made is a jury question.

In *URS* the same issue was addressed but it is not clear whether evidence had been presented by the defendant/movant. This court concluded that the Board failed to present evidence describing or detailing the written express warranties in its brief in opposition (although arguments of counsel are not evidence) and did not provide documentation of written contracts. *URS*, at 8. The court assumed that the written express warranties arose out of a contract and assumed that the non-movant had to prove the inapplicability of the statute of limitation. *Id.* citing *Riley*. As previously discussed *Riley* is misunderstood if it is read to

mean that a movant has no duty beyond the bare allegation that a claim is barred. In *URS* there may have been evidence of the lack of express warranties.

In contrast to *URS* in *Dela Motte-Larson* this court held that the express warranties that were part of the contracts "are still intact." It assumes that other written express warranties are barred but, as noted, this misapplies the summary judgment rule and case law. The court went on to find that the only contractual relationship between the plaintiff and GAF was a bond but that plaintiff failed to "act ... on that bond" and failed to submit evidence of other written warranties made by GAF. On the facts of that case the warranties may have been only contractual but it is unclear whether proof of the absence of warranties had been presented by the movant. Neither case is dispositive.

The dangers of prematurely shifting the burden to the non-movant were apparent in *Penn* v. *Nooney* and *Mitseff* v. *Wheeler*. In *Penn* the movant also made an assertion without evidence and challenged the non-movant to prove the non-movants claim by use of the evidentiary materials permitted in Civ. R. 56. Summary judgment is not trial by affidavit, deposition, answers to interrogatories, written admissions, transcripts and written stipulations. *Penn* rejected this "assertion only" motion for summary judgment and cited *Mitseff* which distinguished a 56(E) situation from the first step of summary judgment: the movant must do more than make a bold assertion. *Mitseff; Toledo's Great Eastern Shoppers City, Inc.*

Appellees failed to present evidence to show that the express warranties were exclusively oral. It could easily have conducted discovery to determine the nature and age of the express warranties. Summary judgment was improper on count two. The claim of written express warranties (contractual or otherwise) survives. Assignment of error No. II is sustained.

*Judgment reversed,*
*and cause remanded.*

PATTON, C.J., Concurs
SWEENEY, J., Dissents

SWEENEY, J., Dissenting:

I am in agreement with the majority's ultimate determination to reverse and remand this case for further proceedings, but I respectfully disagree with the means with which this determination was made. Specifically, I

take issue with the majority's decision to not follow this Court's recently published ruling of *Aldrete* v. *Foxboro Co.* (1988), 49 Ohio App. 3d 81 and our holding in *Board of Education* v. *Regner, et al* (Oct. 26, 1989), Cuyahoga App. Nos. 56053, 56054 and 56060, unreported, which relied upon *Aldrete.*

The majority attempts to distinguish the present case from *Aldrete* by stating that the tort and contract claims *sub judice* are not inextricably intertwined as they were in *Aldrete,* pointing out that the prayer for damages in *Aldrete* reflected the intertwining aspect of those claims. Upon review of the record in this case, I see no reason to not apply *Aldrete.* The plaintiff's tort and contract claims all arise from the same conduct, *to wit,* the alleged faulty construction of the school building. The intertwining nature of the claims is further evidenced by the plaintiff's amended complaint, which, rather than making a specific prayer for damages on each count, instead makes a general undifferentiated prayer for damages at the close of the pleading. The tort and contract claims are thus differing theories of recovery arising out of a single set of facts. *Aldrete, supra,* syllabus.

The majority also cites to *Noble* v. *Colwell* (1989), 44 Ohio St. 3d 92. In *Noble*, a counterclaim was pending and unresolved at the time of the court's judgment, and the court did not make a Civ. R. 54(B) determination of no just reason for delay relative to the rulings on the claims stated in the complaint. In the present case, the court made the Civ. R. 54(B) determination even though other claims remained unresolved.

The present case more closely resembles a companion case of *Noble*, that of *Chef Italiano Corp.* v. *Kent State Univ.* (1989), 44 Ohio St. 3d 86. In *Chef Italiano Corp.*, the court reviewed the application of R.C. 2505.02 and Civ. R. 54(B) relative to a multi-party, multi-claim case. The court ruled that an order of a court is final and appealable only if the requirements of R.C. 2505.02 and Civ. R. 54(B) are met. *Id.*, p. 88, citing *General Electric Supply Co.* v. *Warden Electric, Inc.* (1988), 38 Ohio St. 3d 378. There, as here, the court's action did not determine plaintiff's action nor prevent a judgment against the appellees because certain claims remained unresolved. *Id.*, p. 88-89. Accordingly, the order of the court was "not a final, appealable order pursuant to R.C. 2505.02 regardless of the presence of Civ. R. 54(B) language." *Id.*, p. 89.

Lastly, I would remind the majority that *Aldrete* is controlling authority on this Court

unless and until it is reversed or modified. Supreme Court Rules for the Reporting of Opinions, Rule 2(G)(2). The majority does neither of these options. It simply chooses to not follow *Aldrete* without expressly reversing or modifying that authority.

Accordingly, I would reverse and remand this matter for lack of a final appealable order.

*Judgment reversed*
*and cause remanded.*

---

[1] Appellees' motion for summary judgment noted that the trial judge had issued a memorandum in other cases involving appellant and claims alleging liability of various parties for construction and that he had determined that the following statutes of limitation applied to various causes of action: express warranties (six years); implied warranties (R.C. 1302.98 - four years), negligence (R.C. 2305.09 - four years), and strict liability (R.C. 2305.09 - four years). The journal entry in this case (113144) makes no reference to this memorandum and this case is not one of the cases for which the memorandum was issued. The memorandum does not specify the claims involved.

[2] Appellant's claims against Lesko and Associates and its claims against appellees on counts one and six are outstanding. The trial court provided that there was "no just reason for delay."

[3] See *Liberty Mutual Ins. Co.* v. *Wetzel* (1976), 424 U.S. 737, 743, n. 4; *Hollick* v. *Rice* (1984), 16 Ohio App. 3d 448, 451-452; *Norvell* v. *Cuyahoga County Hospital* (1983), 11 Ohio App. 3d 70, 71; *Fireman's Fund Insurance Co.* v. *BPS* (1982), 4 Ohio App. 3d 3, 4; *R & H Trucking, Inc.* v. *Occidental Fire and Casualty Co.* (1981), 2 Ohio App. 3d 269, 271-272.